Next in number 24-1102, Brown v. Wal-Mart, and Mr. Hawkins, whenever you're ready. If it please the court, I'm David Hawkins, and I've represented the plaintiff below the Apologize to the court. I seem to be losing my voice. Probably a bad thing for a lawyer, a good thing for the court, probably. But in this case, the district court erred in ruling that the plaintiff must prove the defendant had actual or constructive knowledge of the specific ice patch that caused the plaintiff's fall and injury. Now this is a Virginia snowstorm case. Snow began late the night before, about 10-15 p.m. At that time, temperatures were above freezing. So it's common sense, snow falling on black asphalt, above freezing temperatures, there's likely to be melting. As we get past midnight, the temperatures drop, and they drop below freezing at that point. Common sense once again tells us ice is going to fall. The snow continues heavily, more heavily, like 3 or 4 in the morning, tapers off and ends about 6-15 a.m. That morning, the plaintiff comes at about 8-30, I think 8-31 in the video, steps out, slips on ice, and falls. The court below applied the standard that is in a dangerous substance case on the floor and said that the plaintiff had to prove that Wal-Mart, the defendant, had knowledge of the specific ice patch in which she fell. I appreciate you going through that. My question is on this notice issue. I'm trying to understand how notice works in your view on this ice and snow question. Is it your view that Virginia law says we don't look at notice at all if there's inclement weather, or is it that reports of inclement weather and temperatures constructively put Wal-Mart here on notice? I'm just trying to understand. I understand your argument that we got different cases from a banana peel in a grocery store and an ice, and you don't think Virginia law requires there to be notice of the specific slick spot of black ice. I'm just trying to conceptually understand. Is it because if there's general bad weather conditions or reports, that's constructive notice, or do we just not look at notice in snow and ice cases? First, I wouldn't say general bad weather conditions. I think the rule is specific to snowstorm cases. In that case, notice of the fact that there potentially could be a dangerous condition on the premises outside where the snowstorm occurred is presumed from the fact of the storm. Just playing that out, snowstorm sounds kind of obvious, but maybe it's not. How do you know what's a snowstorm? That's when the snow comes down, I would say. May I just say in this case, we've got two inches of snow. I don't think there's any question here. We're trying to apply Virginia law, and we're trying to understand what it is. We could say, hey, we don't need to worry about the rule because here there's two inches of snow. I'm trying to understand the rule from a Virginia law standpoint on snowstorm. If a couple flights come out the sky sometime at the night, but it doesn't stick anywhere, maybe that's a snowstorm. Maybe it's not a snowstorm. I'm just trying to understand what your view of it is. Maybe that is still notice and all that goes into what the duty is. You understand my question? It's not case specific. It's how do we think about this concept of snow and ice storm. Can I say that I think it is case specific? How much snow do you have to have before the duty to remove? That's what the rule is in Virginia. That is, the owner has a duty to take reasonable steps to remove ice and snow. Your question being, when does that occur? I would say, in my opinion, it has to be some accumulation of something because otherwise you wouldn't have a duty to remove. That's your opinion, and we appreciate it, but is there a case? There is no case. Can I tell you, I think there are three instances of cases. Before you get to that, because I had a bunch of the same questions and I am genuinely confused by this. There doesn't have to be accumulation. I think there does. There does have to be accumulation. Had it just rained and then frozen, we would be in a whole different, then none of this would apply. I don't know. There has been no case that has ruled on that. But it's so weird because it's not as though your client slipped on snow. The snow had been removed. What she slipped on was ice, and you could have had the ice without the accumulation, so I also am trying to figure out how this works. Well, in this case, you didn't have the ice without the accumulation because it snowed, it melted, then it froze. That's what is in the record here. The only Virginia case, there is no case about freezing. Maybe this is right. So Virginia law treats differently ice that results from frozen rain or rain that freezes versus ice that results from snow that melted. I am not saying that. I am saying that there is no case that I can point to that says what Virginia would rule if it rained and froze. The question seems to be, I take what you are saying, is that the point is that a storm may provide notice. But in order to provide notice, it needs to be noticed. So if there is snow falling out of the sky, we presume that people can see the snow and understand it. If instead we have rain and a later freeze, that might not provide notice because we are assuming a lot of work on behalf of the reasonable person to recognize the temperature at 5 a.m. They may well see the snow, but the question is, would it provide a reasonable person with notice? It seems like to me, I don't see these as being different cases. The question is, would it provide a reasonable person notice that this is taking place? Maybe in some cases it would and maybe in other cases it wouldn't. But the clean line is, when you see white stuff falling out of the sky, that doesn't take a meteorologist to understand that there may well be a problem with snow and ice. Yes, sir, and I would certainly agree with your last statement. All I can say is there is no case in Virginia that has said what happens when it rains and then freezes. I would argue, certainly argue, that if temperatures are freezing and you've got freezing rain and the temperatures fall, then certainly everyone, it's common sense, everyone would be able to notice there are going to be slick spots, there are going to be icy spots. There should be a duty then to go out and do something, put down chemicals, take reasonable steps to clear. But that is not the case here. The case here is we had two inches of snow. So we've asked a lot of questions that it shows, at least it seems to show, we're trying to figure out exactly how this works. Is there, and I realize there is a specific question of whether you have to know the general danger or whether you have to know the specific spot, but is there some thought here that, from your perspective, that notice is kind of beside the point? Because they called the contractor and said, come do your work. Yes, sir. So, I mean, if you've done that, is notice still an issue? I don't think it's an issue in this case to begin with. I don't think it should have been an issue legally. If I had to argue, which I don't think I should have to, that notice was there, then I would say everybody knew it started snowing when it was melting. Everybody knew the temperatures dropped, it was freezing. The manager knew when he got there that morning that he almost slipped and busted his ass. They put down salt. Employees did on the sidewalks. Certainly they knew there was ice there. Why would they put down salt otherwise? And then they get the contractors to come in. Surely they knew there was potentially dangerous conditions out in that parking lot. Why would they take all those steps otherwise? But we still have, and I get that argument, that's why I asked the question, but you still have the legal question of whether you have to have the general knowledge versus the knowledge of the specific location of the ice, right? No, sir. Excuse me? No, sir, because that's not the rule in Virginia. The rule in Virginia is once you have the storm, the only duty is the duty to take reasonable steps to clear. I got you. I'm not suggesting you were wrong there. I was saying that's your position and that your colleague has a different position. That's the question we've got to answer, right? Yes, sir. And may I say I think there are three clear instances where Virginia has made this rule. Number one, I'm getting close to the end, but I referred to the model jury instructions and the comments there. That's a panel of eminent judges, lawyers, and academics who are approved and appointed by the Chief Justice of the Virginia Supreme Court. Those instructions are the Bible for lawyers in Virginia and judges as to what the law is. I'm not aware of a single case where the Virginia Supreme Court has refused or has said that the model jury got it wrong. And the commentary there says in the Snow and Ice Storm, this is the second one. Can I stop? I understand you've got two more that you can talk about, but you've got a little bit of time. Can we turn to the second question? Assuming that there was notice here, the second question is whether they did it because they did. A contractor was there, showed up. Tell me why you think that having the contractor show up and the evidence they have of what the contractor did isn't sufficient to satisfy their reasonable standard of care. If you examine that video closely, he drives down the lane. He doesn't scrape. He doesn't put down any chemicals. Where people step out of their cars is in the parking areas. Nothing was done there. Can I ask you that question? When we look at the still shots from the store and the video, do you take that as basically rebutting the testimony from Walmart that the contractor put down chemicals and salt? The risk manager who said he came and he put down chemicals and salt, and you think that's just like flat false. And we know it's false because we can see the video. And when he drives through, there's no sprinkling of salt in the water that's around the truck or anything else. There's more to it than that even. But is that the sort of linchpin of the story, right? Is that if we didn't have the video at all, there would only be evidence that he put these chemicals and salt out. But given the video, there's at least a dispute about whether what the Walmart executive said was true. No, there's more to it than the video. When the manager comes out, he looks and he says there's no salt here, and that's in the testimony. He said there was no salt put down where the people get out of their cars. He directly says that. And then, of course, when the plane falls, she says I got no chemicals at all on my clothes. And so there's certainly evidence that they did nothing in those spots. And then the third thing is the pictures, the still pictures taken by the manager, where he's 15 feet away maybe from where she fell. You can clearly see snow and ice in those areas. So let me talk about that. Let's assume we didn't have a video and we didn't have the manager in this case. I just want to understand generally. So Walmart or whoever calls a contractor, they do some work, spread some snow and ice, maybe spread some chemicals, maybe they put their scraper down but they don't get every spot. Is it your position that in the case of snow and ice, it's the responsibility of the store or the landowner to eliminate every piece, every little location of ice in a parking lot? No, sir. They're not an insurer, and I agree with that statement. But the cases say they have to make a systematic effort. So if they had done it and they had sprayed or they had scraped and had missed a spot, you'd say that might be reasonable response? Yes, sir. Even though there might have been this particular spot that was left unremitied? Yes, sir. And I take it that part of your argument also is it's not sufficient just to come in and clear the snow and the ice that is sort of there at the moment because that's going to leave naturally some moisture which may refreeze. So clearing it away is not sufficient. You have to salt it or apply some chemical to prevent refreezing? That would be what I would say would be reasonable steps. That would be my argument. They didn't take reasonable steps here. I'd ask you to look at Langland Road. Well, I guess just so I make sure I understand. So yes, like it is not enough to clear away the snow and ice. You have to use chemicals to prevent refreezing? I think that would be the argument that they didn't take reasonable steps because they didn't do anything in the areas where people get out of their cars. Yes, you have to use chemicals or salt. Because I don't understand. If there's ice. I looked at the pictures, your own pictures, your own plaintiff. They say, like when I stepped out of the car, there was nothing visible on the ground. So obviously they had cleared away the two inches of snow. But if you look at the manager's pictures, they show the ice and snow. And the manager, when he comes out, says it's slushy. And then he says, pardon the language shift, this is ice. That's what he says. He saw it. Okay, so you don't need this. So you can say, I really do want to understand what your argument is. So you do not need it. Even if they didn't salt and even if they didn't put down chemicals, that might be okay. But, in fact, here the record is uncontroverted that there was visible snow and ice in the parking lot is what you would say. Yes, ma'am. And that's clearly in the record. Thank you. May it please the Court, Victor Scaff here on behalf of Walmart. It is black letter law in Virginia and in the circuit that in a premises liability case, a plaintiff must prove evidence of the defendant's actual or constructive notice of a dangerous condition. And constructive notice may be shown by evidence that the defect was noticeable and had existed long enough to charge the defendant with notice of it. Contrary to what the plaintiff argues in this case, that is what the law is. That's black letter law. And there have been no exceptions carved out for snow and ice by this court or by the Supreme Court of Virginia. Here the district court was correct. The district court considered all of the evidence before the record and found no evidence of actual notice of the specific defect that caused the fall. The icy patch here in this case. Can I ask about the district court's analysis? Because there's the bit where the manager allegedly says, as he's looking at the site of the plaintiff's accident, oh, I almost busted my rear end in the parking lot this morning. And the district court seems to have held that no reasonable jury could infer from that statement that he meant the parking lot he was currently standing in? Yes, ma'am. How is that not the world's most natural inference? Because the plaintiff in her testimony was there another parking lot that was alluded to somewhere in this record? Like had he stopped in a different parking lot on his way to work? Well, he had gotten out of his apartment, I believe, and walked through a parking lot, and then he got to the store, and then he parked in a totally different area of the store. But that's a different question than what he meant when he said, oh, I also almost busted my rear end in the parking lot this morning. I think there were two parts to it. Number one, the plaintiff testified. She made that statement that he made that statement, that he almost busted his butt. But he didn't, when I asked her specifically, did he say where that was? No. Did he say it was even in this parking lot? No. Did he say when that was? No. So that was that part of it. Wait, your story is that, like, that was at his parking lot at his house? It could have been. Like two days ago? Well, that had not been established. That's your theory. No, Judge, all I'm saying is that the evidence that the plaintiff put forward was insufficient because she couldn't establish any of those things. Because it could have been that he was talking about six months ago when he was in Aspen? It's possible, but I think it could have been anywhere. You should stick to that argument. Try that one before the jury. That one's going to work well for you. No, I guess my point is that there was nothing to establish. And then his testimony was? Just to be clear, he says, we're assuming now the truth of it, he says, while he is investigating the site of the plaintiff's accident, I believe he's kind of crouched down looking at the ice, and he says, oh, I almost busted my rear in the parking lot this morning. And from that, no reasonable jury could infer that he meant the parking lot he was currently standing in. Yes, ma'am, without more detail. That was the plaintiff's, that's what he said. This is what he said to me. But without more, it was insufficient to prove that there was notice of that actual condition. Isn't that what juries are for? They hear that statement and they decide whether he meant that parking lot. And to say that that would be an unreasonable inference for a jury to draw just strikes me as extraordinary. I'm not sure you need to defend this. I don't know that you want to die on this hill. No, I just think I believe that based upon, that was her testimony, and based upon that. I mean, it does suggest that if you think that's the hill that you need to die on, it suggests that you don't believe that you have a, like, prevailing argument. If that's really the argument that you're making, like, that suggests, like, when people make wildly unreasonable arguments, it suggests that they do not have reasonable arguments, right? And so that suggests to me that you do not have a reasonable argument. No, Judge, even if you believe, even if you can, even if that is enough to establish actual notice, it also has to be proof that the defendant acted unreasonably with regard to the notice. And in this case, as has had been discussed to some degree already, Walmart acted reasonably to keep its premises in a reasonably safe condition. And the evidence of that, don't describe it. Is it the affidavit of Mr. Pritt and the 30B6 discussion of Erica? Yes, ma'am. Yes, sir. It's also the video footage which shows that it's in a good condition, that the contractor was on site going through the aisles. It was also the photographs that were shown. It was the plaintiff's testimony that she said she drove around the lot, and she didn't see anything that caused her concern for her own safety. It was all of that. Does the, does, and I hear, I mean, I think I understand that part of the argument. Is, is there, could a jury look at the video and say that the video evidence of the parking lot calls into question the truthfulness of Mr. Pritt's affidavit because for two hours there's no evidence seen that there's any chemicals, any salt, or any scraping taking place? I'm not suggesting what happened or didn't happen, but could a reasonable jury look at that video and say this calls into question to me whether Mr. Pritt and Erica were telling the truth? I don't think so, Judge. I think that the evidence of that video and those photographs show that it was in a reasonably safe condition. I know, but what they said, it may do that, and maybe that's your argument, but my question maybe is a little more specific and a little more preliminary. If Pritt and Erica say there was chemicals dispersed or salt dispersed, we have a video that goes for two hours where most of the park, most of the, in the area at least where most people seem to be parking closest to the door, and we don't see any chemicals dispersed or any salt dispersed. Now, that doesn't mean they're not telling the truth, but it seems to mean either salt or chemicals were dispersed at a different time other than those two hours, in different places other than those locations closest to the door, or that they weren't accurate. And so I'm just wondering, in light of what we're looking at, is that enough question, does that raise any question that we're not sure yet what they did in terms of fulfilling any duty? Well, Judge, I think where we are in the case is on summary judgment. So it was the plaintiff's burden to come forward with evidence that appropriate measures were not taken. Not Wal-Mart's duty to come affirmatively and provide evidence to the contrary. Wal-Mart's testimony and Wal-Mart's evidence was, yes, we did everything we were required to do under Virginia law, and that parking lot was in a reasonably safe condition. This sort of, I'll call it speculation, that there was no pretreatment put down, that there was no salt put down, that it was not scraped, I mean, we only have an hour before in terms of footage. So the only evidence is, that type of evidence is totally speculation. Well, it's, I mean, the video is not speculation. I mean, it's not speculation to look at the video and see what was done or not done. Correct. So, and maybe you're right, but, I mean, Wal-Mart's put in an affidavit, and it's got testimony that, I'm not sure, 36 witnesses' testimony about someone else is evidence that can be considered or not under, if you want it for the truth of the matter asserted, maybe, yeah, that's a separate question. But Pritt's affidavit, you know, if that's the basis of Wal-Mart's reasonable response, it seems like, I mean, if we were to say, let's assume we had a, Pritt, you know, a month later said, I got pressured, I did that affidavit, it was a complete false. I mean, you know, you would say there's a question of fact then, wouldn't you? Well, but Judge, again, that's not where we are. I understand, but accept my hypothetical. If that happens, would you say there's a genuine dispute of material fact? I guess I would have to, but that's not where we are. Of course that's not where we are, but I'm trying to figure out if evidence, two hours of evidence in the area you would think, if you put down salt and chemicals, that's where you would do it, calls into question that. And if it was earlier, which is certainly possible, that's 730, they may have done it earlier, and, you know, you would think then you'd say, well, all you need is the contractor to say, I did a little short affidavit, and that doesn't mean that didn't happen. And it doesn't mean that you even needed to do any of that. I mean, I think you could look at a lot, and it could look clean, and you could say, I called the contractor, they came out, they looked at it, they said everything looks good. Might have missed it, might have been wrong, but if your story is they put down salt and chemicals, and we have two hours where it doesn't look like they're doing it, does that not create a question of fact as to whether that occurred? I would still say no, not at this particular instance of the case. Again, it's only an hour before, and that's really what we're considering in terms of the plaintiff's incident. I mean, the undisputed evidence shows that they were on site for hours before that. Wait, what is that evidence? Yeah, tell me that evidence. That was in one of the affidavits, I believe, or the affidavit. So that doesn't help me, right? I don't want to put you on the spot. If you're making a claim that you have evidence that the contractor was on site for hours, right, that's a representation you're making. I need something more than it's in one of the affidavits somewhere. Well, I may have misspoken in that regard. I mean, I may have misspoken in that context. But I did want to address one thing, Judge. I didn't mean to interrupt you. But the evidence would be, again, there was a question asked about, well, what should they have done, maybe what should they not have done, in terms of putting on and taking care of the parking lot. That was their burden, again, to prove that even if we had a contractor on site or the contractor wasn't doing what they were supposed to do, that it was in violation of some sort of industry standard. And that certainly, there was no expert. So help me understand that argument. If Pratt had come in and given an affidavit that said, I walked outside and the asphalt was clear, I didn't think any chemicals or salt needed to be put down, the contractor agreed with me, I would understand that argument. But your expert, you know, asset protection coach, Pratt says that Walmart took action, that they put down chemicals and salt. And hypothetically, except for a minute, that I think the video suggests that he's lying about that. Just hypothetically. Walmart has taken the position that this is what we did. That suggests to us that that was what they thought was necessary, that your expert, your employees thought that that was what was necessary, because otherwise he wouldn't have claimed falsely that that was happening. Right? I mean, that's what Pratt says. Hypothetically, the video suggests that he's being dishonest about that. That seems to raise a question that he thought that was necessary, even though it didn't happen. Right? And so that's the standard that Walmart itself seems to have put forward. Well, I don't think his testimony or affidavit states that it was happening in that specific hour right before that's shown on the video. I think he's saying that, and or about that time, that that's what was happening. And it may well be at trial that he will then testify to that and the contractor will say, yeah, I did it at 6.45 and I was done by 7.28. Right? And why we just have video starting at 7.30 is a question, and jury can decide to draw that in your favor or the plaintiff's favor. It was your video. I don't know why you didn't provide it if it showed the very thing that you thought was necessary. But I totally get you might well win in front of a jury. But what I've got to do is look at your proffered evidence in light of the video, and the video, except for my hypothetical, shows that your guy is lying. Right? And what do I do if that's hypothetically true? What do I then do? Well, I don't believe he's lying. I believe he said, I mean, I don't think the video is that clear. I mean, it shows the truck going through the process. But you agree if it did. Right? So this is the equivalent of Judge Quattlebaum's question earlier. If Pritt withdrew his affidavit, or if hypothetically I found that the video showed he was not telling the truth, you would agree there's a factual question there. Even if we withdraw his affidavit, I still don't think the evidence is sufficient enough to prove that Walmart didn't act reasonably under the circumstances. It actually would be, I think, better for you if you didn't have the affidavit. Right? I think if you didn't have the affidavit, we could have a discussion about whether ice and chemicals needed to be put down. Right? But it's hard to have that discussion when your own representative says, this is what's happened. And, like, a false exculpatory statement is evidence of knowledge of guilt. Well, again, I don't think that he's making a false statement. I don't think it's, in terms of timing, says that it's happening during the video. And I'll go back to my question. I think it's their burden to prove that we acted unreasonably under the circumstances. And that has not happened in this case. The fact that even putting down ice or chemicals or sand or doing whatever they have suggested is total speculation. There's no expert testimony in the case or testimony otherwise that says, you know, this is what you do. And your view is that Pritt's testimony that that was what was done, if false, suggests that that's what he thought needed to be done. Right? That's the false exculpatory statement. And I get you think he's, you know, he's, you know, a priest and everything, we can trust everything he says. I totally get that. But hypothetically, except for a minute, that, like, that doesn't seem to be the case. Hypothetically. Right? And so he said this is what we need to do. And if he's lied about that, that suggests that he's the person that has put that at issue. Right? Your own witness has suggested by his affidavit that they needed to put chemicals and salt down. Right? That's the evidence that that was what the standard of care was. Your witness. Number one, I don't think he can set the standard of care. Number two, I don't think that he's saying it needed to be done necessarily. I think all he's saying is that they were doing it. Not necessarily, but it's some evidence of it. Right? Yes, sir, that that's what they were doing. They were out on site doing those things. Counsel, can I ask a slightly different question? One of the issues we have and that the Virginia law talks about, you alluded to it earlier, is there's a certain period of time after notice occurs that a property owner has to remedy an unsafe condition. Yes, sir. Does that issue apply here? Assume we think Wal-Mart doesn't have to know about that very specific patch of ice. Do we really have a grace period case here? I mean, you're not suggesting, are you, that Wal-Mart had more stuff to do than if we had just waited 30 minutes or an hour, which would have been a reasonable time for them that there was more stuff to do, are you? No, sir. We didn't raise that issue. And quite frankly, I mean, that is a correct statement of Virginia law that Mr. Hawkins said before. It's just not really applicable here. It's not applicable here. We didn't raise the issue. Now, we don't concede the issue if the case were to have been tried. I understand. One other thing. Mr. Pritt, I think in his affidavit, says he went out and inspected the lot. Isn't that pretty accurate? Yes, he said he had come out. I think he said, just generally speaking, he had come outside. Do you have a view as to whether the video shows him coming outside? I don't. No, I don't have a view on that. I'm not sure that it does. But I'm also not sure that he's saying, I came out in the front of the store in the front of the parking lot. Because, again, as the court is well familiar, these Wal-Mart stores are big. There are other areas of the parking lot that he could have been in. And he's not saying when he did it. So just like the snow and ice or the chemicals and salt could have been done before 730, so could his inspection. And it could also have been a different location. My question was simply, is it your position that the video shows, depicts what he said he did in the affidavit? I don't believe that it does, Ron. What he says precisely is, at approximately 730 a.m., which would be included on the video if it was true, I walked out, inspected the parking lot, and spoke with them. The them being a reference to the contractor in the previous paragraph. And so at 730, we see the truck pull all the way through and not stop. I mean, there's two videos. We only have stills from one, but the video from the other. And the contractor that's there at 730, when he claims that he walked out and stopped the truck and talked to him, doesn't stop, doesn't have an interaction with a person. Again, really plausibly raising the question about whether your guy is telling the truth at all. Again, I don't think he was saying that it happened actually in front of the store. Again, there were other parts of the store. Was there a parking lot in the back? There are other areas in the store. No reasonable jury could conclude when he says that they were applying chemicals and scraping the parking lot as necessary. At 730, I walked out, inspected the parking lot, the one he just said was being salted, and spoke with them. I also requested that they be sure to salt the parking lot areas on the side of the store, meaning not where he is. No jury could conclude that that's referring to the parking lot in front of the store that he's asking them to salt and chemical. That would be our position, Your Honor. Just before we let you sit down, I just had one other question about Mr. Pritz. Am I remembering right, this is the declaration that was attached to a brief? Yes, ma'am. It didn't come out in discovery, so no one's had a chance to depose Mr. Pritz. I don't know that it's necessarily in the record, but his name was provided at the very beginning of the case. The decision was made by plaintiff's counsel not to take his deposition or not to deal with him. So you can do that, just attach an affidavit to your brief? It was your reply brief, right?  So the case is over. There's no chance to ever depose him. Even if we had submitted it on our initial brief, that was okay. It wouldn't have reopened discovery in terms of taking depositions or anything. Just to play that out, let's assume it was someone who hadn't been disclosed. That might be problematic for you, but a district court might say, I'm going to allow it and I'm going to let the guy take his deposition. Perhaps, Judge, I don't know. That's speculation again. That's just how the real world works. I'm not saying that's bad for you. I'm just saying you put it there. If the guy didn't have a chance to take his deposition, if your colleague didn't have a chance, he could have asked to and the district court could have looked at that. He could have, but that did not happen. There was not a motion to strike filed. This is on appeal. It was the first time that issue has been raised, and we think it's inappropriate for the court to consider it at that time. The plaintiff's lawyer might have decided that it's the best evidence that he has. He might have looked at it and said, having the Walmart guy lie about what happened is actually the best affirmative evidence that he has. If he struck it, he might well lose. Maybe he made that decision. I don't know, Judge. Thank you very much. Thank you. Mr. Hawkins, I think you have rebuttal time. Thank you. Sorry again about the voice. I would suggest to the court there's one Virginia case that clearly says what the rule is in a snowstorm case. It's the Mary Washington Hospital case versus Gibson. It's cited at page 13 of my reply brief. In that case, it's a snowstorm case, and the court instructed the jury, the trial court did, that the owner of the premises had a duty to use ordinary care to remove ice and snow within a reasonable time, and then it added, after it knows about the use of ordinary care, should know that it is there. Now, those are the words from the foreign substances instruction. The Virginia Supreme Court reversed and said that was not the law, that that instruction should not have been given. I'm going to read from, I think, with page 6. It's on my copy of the case. The court said, and I quote, if, however, a reasonable time had passed after the end of the storm, as the plainest evidence showed in this case, it became the duty of the hospital to use reasonable care to remove natural accumulations of snow and ice from the areas used by its walkways. And it cites Langland Road Apartments, King's Market versus Yates, and then the court says instruction 11 should not have been given. So clearly, in that case, the Virginia Supreme Court said, once a reasonable time has passed, and they have the opportunity to clear, and that point on, specific notice that a dangerous spot is there is not the law, and rather the law is the question, did they take reasonable steps. Can I ask you a question about this Pritt declaration that we've been talking about so much? So you sort of allude in your brief to the idea that, well, this just popped up on their reply brief. It wasn't part of discovery. But did you not want to depose Mr. Pritt? Did you ask for time to depose him? We didn't because the Walmart representative who speaks for Walmart said we have no record of anybody inspecting. We have no record of anybody doing anything, putting down snow, putting down chemicals, anything else. So we don't believe there is anybody that's going to say that. And, of course, then this pops up, which was a surprise to us. His name was delivered in discovery as a person at the store, but nothing was said about he had any knowledge of these things. When Walmart itself says we have no record of that, we thought there wasn't any. But that gives you the right to move to strike it, and you didn't move to strike it before the district court, correct? I kind of like what it said because it puts them on notice. It puts them on notice. I don't disagree. That's fine for you to have that view, but you can't say. Judge Harris, I think, made the point that your brief almost makes it look like we shouldn't consider that affidavit because it was too late. And your position is perfectly fine for you to say, it may have been late, but I liked it, so I'm not complaining about it. It's kind of odd to say, on the one thing, I think it's the greatest thing in the world for my case. On the other hand, I'm a victim of a late affidavit. And the law, I mean, you would agree with me. I know you've been in trial courts a lot. I mean, if you get a late witness, that happens in real life. Some judges may say it's too late, I'm not going to allow it. Some may say, hey, I understand it happens, and I'm going to extend and let you take a deposition. Any of those scenarios could play out. And it sounds like you like it, so you just sat tight. May I say, as a trial lawyer, I like to keep my options open. I get it, but it's a little bit . . . I agree, Your Honor, and I think . . . What's the term? Approbate and reprobate. Maybe I am doing a little bit of that. Can I ask you two questions? Yes, sir. Factual questions. Your colleague said the contractor was on site for hours. Is that . . . I'm asking because you know the record better than I do. Is there evidence of that? Not a bit, no. The only evidence is that video. Well, and some testimony that they were there at 730. The court seems to think they were there at 730. That's both based on the video and Pritt's statement that he spoke to them at 730. Yes, sir, and the video is at 730, 731.   But, I mean, just to . . . Can I ask one more question? Sorry, there was a second one. Yes, sir. There seem to . . . In different conversations we've had, we sometimes refer to the contractor being called, and sometimes the contractor just showed up on its own volition. Is there evidence one way or the other in the record as to whether Wal-Mart contacted the contractor that morning to have them come, or whether the contractor came by virtue of the contractual relationship without a direct call from Wal-Mart that morning? I don't believe there's any, at least to my memory, that there's anything in the record either way. Either way, okay. Just to follow up on the timing issue, I understand your response to Judge Rich's question. There's nothing in the record showing that they were there before 730 when the video starts. But, there's not a position Wal-Mart's taken that would be inconsistent with the fact that they got there earlier and had already done some work. I mean, in other words, if we, you know, grant your . . . and the contractor's called and says, yeah, I was there at 5 and I put all this ice down and I did it in a systematic way, is there anything about this case that would be a problem with that being part of the evidence at trial? Well, of course, that would be something new. I guess not. But I note in the print affidavit, he says that he viewed the video and that the video, that is the contractor. Right. So that's at 730, huh? Yeah. But I think I saw something that they keep video for a certain amount of time based on document retention, which, you know, they're not representing this as the video represents the total time he was there, necessarily, is all I'm saying. No, but that's all the video they were able to produce for us. So I think if they wanted to say something else, we'd have a spoliation, perhaps, argument. But this is all we've got. That's what's there. I'm going outside the record more than I need to.  Thank you very much. Great. We're going to come down and greet counsel, and then we will hear our third and final case.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.